THOMAS DEWBERRY, plaintiff in error, *vs.* RACHAEL SHANNON, executrix, *et al.*, defendants in error.

1. Where a bill shows on its face that the complainant can obtain full and complete relief with the original defendants alone, an amendment introducing other defendants and another cause of relief wholly distinct from the first, will render the bill multifarious.

2  The verdict is not against law and evidence.

Equity.    Multifariousness.    New trial.    Before Judge HALL.    Monroe Superior Court.    February Term, 1877.

Dewberry filed his bill against defendants, making, in brief, the following case :.

In 1863 he loaned to Richard G. Watson a sum of money for the purpose of paying for the land mentioned below. In 1869 he sued on the note given therefor, and in 1870 obtained judgment.    Execution issued, but was not levied for several years, interest accruing in the meantime.    When complainant was proceeding to enforce his *fi. fa.*, at the earnest request of Watson, and under advice of counsel, he was induced to compromise it.    Having been in the habit of compromising " war debts," he agreed to remit one-half of the present one, to enter the balance settled, receive certain described lands from Watson, and pay the latter $2,-100.00 in money.    This agreement was carried out, complainant advancing $800.00 to pay off all the liens on the place, so as to take a clear title thereto, and it being understood and stated that there were no other liens superior to his.    Watson was anxious to repurchase the place as soon as he could.    Complainant, desiring to assist him, allowed him to hold the land as tenant for three years.    He then resold to him, taking promissory notes for the purchase money, and giving bond for titles.    None of the notes have been paid ; upon his failure to pay the last, complainant began ejectment against him.    The latter thereupon filed his petition in bankruptcy, and claimed a large portion of the land as a homestead.

One John Shannon held certain notes of R. H. Watson and R. G. Watson, due in 1858. In 1867 he brought suit and recovered judgment thereon. Afterwards he agreed to compromise such debt for twenty-five cents in the dollar. This agreement was executed by the payment of all but a small amount of interest. Shortly aftewards Shannon died, but his representatives were fully aware of the state of the transaction, and acquiesced therein. Some three years after complainant went into possession, Rachael Shannon, executrix of her deceased husband, had the land levied on under the aforesaid judgment, as the property of R. G. Watson, and is now illegally proceeding to have it sold.

[The bill charges that the Shannon judgment was against R. H. Watson, principal, and R. G. Watson, security, but the exhibit indicates that they were sued jointly as makers.—R.]

The Shannon judgment has been held open for years ; no effort has been made before to enforce it; the holders have seen numerous younger judgments against the Watsons satisfied without effort to secure anything on it; they have colluded with McMickle in the transaction set out below, and only now levy on complainant's land to defraud him, and by collusion with R. G. Watson. Further, R. H. Watson, the principal debtor, was possessed of ample means at the time· of the judgment and yet has considerable personalty.

After the war, R. H. Watson owed one McMickle $800.00. The Shannon judgment had already been obtained, but Watson executed to McMickle a fraudulent mortgage for $8,000.00 ante-dating it só as to make it the oldest lien on the mortgaged place. McMickle foreclosed, and by representing the title to be bad, succeeded in bidding in the property at a small part of its real value—still, more than enough to cover the *bona fide* debt. Since then McMickle has reconveyed to the wife and children of Watson one-half of such land ; Watson has been in possession of the balance, and McMickle, under pretense of furnishing him provisions, has been paying the amount bid for the land over and above

the real debt to him. Notice of, and collusion in, this transaction are charged on the holders of the Shannon *fi. fa.*

The bill prays as follows:

1. For cancellation of the Shannon *fi. fa.*, at least, so far as its lien on this property is concerned; or else to decree its cancellation upon payment of the small balance of interest due thereon.

2. In default of this, a decree that R. G. Watson, security, had been discharged by the acts of the principal and creditors.

3. In default of this, a decree that, complainant's *fi. fa.*, in settlement of which the land was taken, being a superior lien to that of Shannon, such settlement passed legal title to complainant, and the land is not subject to this levy.

4. In default of this, a decree that the Shannon *fi. fa.* is a lien on all the property of R. H. Watson, and the fraudulently conveyed McMickle place, and that it proceed against him first.

5. A decree that any lien of said *fi. fa.* on the land in controversy has been lost by want of diligence.

6. Injunction to restrain further proceedings against the land.

7. Subpœna directed to Mrs. Shannon, executrix, her agents, Mobley and Shannon, and the sheriff.

Subsequently the bill was amended, and the following charges made:

It was alleged that Richard G. Watson, though he appeared as a principal in the suits against him and R. H. Watson, was really a surety, and so known to be by all parties.

It was also alleged that complainant had brought ejectment against R. G. Watson for the land, and had recovered a money verdict, which was a lien, thereon. It was therefore sought, if the title should not be in complainant, and if Watson, as surety, was not discharged, to force the Shannon *fi. fa.* to proceed first against the property of R. H. Watson, including the McMickle place. McMickle, R. H. Watson, his wife and children were made parties.

On demurrer, the bill was dismissed as to them.

Defendants' answer presented the following points of difference from the bill:

They say that the original transaction between complainant and R. G. Watson was tainted with usury, and therefore, if any conveyance was made in settlement thereof, it was void. Defendants, however, say that, although the instrument made between said parties was in the form of a warranty deed, it was, in fact, a mortgage, and so intended by the parties; that complainant agreed to take fifty per cent. of the amount of his *fi. fa.*, and to loan Watson $2,100; that, in fact, he only advanced $800; and that· said deed was made to secure both debts.

Defendants deny that the Shannon claim was against R. H. Watson, as principal, and R. G. Watson, as security, but say that it was against them jointly as principals.

Defendants deny that their *fi. fa.* was paid off or settled. They say that Shannon, in his life-time, agreed to take twenty-five per cent. of the debt, cash, or else to take thirty-seven and a half per cent. of the debt with interest, that the principal should be reduced $100.00 each year, provided the debt should be paid during Shannon's life, but that no further time should be given thereafter, and that the *fi. fa.* should stand open for the entire debt until it should be paid. Defendants say that about the time such arrangement was made, $210,00 was paid and a credit given therefor, but that no other payment has been made, or effort to carry out said arrangement; nor have they ever been informed that said *fi. fa.* had been paid off except a small amount of interest.

Defendants deny any knowledge of property of the Watsons, other than this land, from which their claim can be realized, or any knowledge of the sale of property from the proceeds of which their debt could have been collected; but they say that all the property thus sold, within their knowledge, was covered by liens prior to theirs, and which were entitled

to the proceeds. They say that they have been informed that some personalty has been turned over by R. G. Watson to his assignee, but not enough to pay his debts, but they should not be forced into the bankrupt court to litigate the dignity of their claim. They offer to assign the judgment to claimant if he will pay the amount due on it, and allow him to collect it from the McMickle property or elsewhere, as defendants are unable to do so. They deny all fraud and collusion, or knowledge of it in others.

The following evidence was introduced on the trial:.

1. Deed from R. G. Watson and wife to complainant, dated March 9, 1870.

2. The record of the suit of Dewberry vs. R. G. Watson, judgment having been rendered for plaintiff January 7, 1870.

3. The record, including judgment and *fi. fa.*, in the eject-ment suit of Dewberry vs. Watsons.

4. Parol evidence. The only point necessary to notice is, that as to whether R. G. Watson was aware beforehand of the intended compromise between Shannon and R. H. Wat-son and assented thereto, or whether he did not know of it until afterwards and never gave any assent, the evidence was conflicting. It appeared that the money for which the notes were given was loaned to R. H. Watson, but the notes were signed both by him and R. G. Watson.

The jury found for defendants. Complainant moved for a new trial; the motion was overruled, and complainant ex-cepted.

W. D. STONE; SPEER & STEWART, for plaintiff in error.

CABANISS & TURNER, by H. C. PEEPLES; R. L. BERNER, for defendants.

JACKSON, Judge.

This was a bill brought by Dewberry against Mrs. Shan-

non, and her son and son-in-law as her agents, alleging that as executrix of her husband, John Shannon, deceased, she was wrongfully enforcing a judgment upon certain lands to which Dewberry claimed title, or a superior equitable lien. Subsequently, McMickle and Rufus H. Watson, and the members of his family, consisting of wife and children, were made parties defendants to the bill. On the hearing, these last named parties were ruled to be improper parties on de-murrer, and the bill was dismissed as to them, and complain-ant excepted. The case then went to trial against Mrs. Shan-non and her agents, and the jury, under charge of the court, returned a verdict for the defendants. The complainant moved for a new trial on the grounds that the court erred in dismissing the bill as to Watson and family and McMickle, and because the verdict was against the law, the charge of the court, and the evidence. The court overruled the mo-tion on all the grounds, and complainant brings the case here for our review.

1. Was the court right in dismissing the bill as to Mc-Mickle *et al.* for multifariousness? To test that question, it is necessary to examine the bill as it stood against Mrs. Shannon in its statements and prayers, and then to see how and wherein McMickle and the Watsons were concerned in the litigation between them. If complainant had a good bill, with a right to recover, against Mrs. Shannon, and the join-ing of the others as parties defendants, and the prayer of re-lief against them was not ancillary to their main line of at-tack, but was to be resorted to only in the event of certain contingencies, which contradicted flatly their case as made against Mrs. Shannon, and thus their bill became inconsis-tent with itself, it is multifarious, and the court was right so to pronounce it, though the courts do not, as a general rule, favor demurrers for multifariousness. The bill alleges that R. G. Watson owed complainant on an *ante-bellum* debt, on which complainant obtained judgment in 1870, which was finally compromised by complainant's taking his deed and

giving him bond for titles on the payment of purchase money back; that John Shannon, the testator of Mrs. Shannon, ex-ecutrix, had obtained a judgment against said R. G. Watson as security for R. H. Watson, who was the principal defendant in the judgment, and had neglected, he and his said executrix, to pursue certain funds of the principal into the bankrupt court, and had omitted to make the money out of said principal when he could have done so in various ways, and had finally compromised the claim with the principal without the knowledge and consent of the surety, and prayed that the judgment be enjoined from proceeding against this land which he had so bought, and that it be satisfied so far as the surety, R. G. Watson, was concerned. Dewberry brought ejectment against R. G. Watson and wife, who joined in the deed to Dewberry for the land, equitable defenses were filed, and the jury found a verdict for Dewberry for money to be levied of the land, and the balance it brought to go to R. G. Watson. In the meantime, R. G. Watson had gone into bankruptcy, and claimed homestead, etc., all of which was settled in the ejectment decree. It also appeared in evidence that the Shannon debt and judgment were both older than the Dewberry debt and judgment.

That part of the bill which brought in McMickle and R. H. Watson and family, was to the effect that McMickle had loaned R. H. Watson some $800.00 in money, and took a mortgage on a very valuable plantation to secure it; that, to defraud R. H. Watson's creditors, this mortgage was made older, and increased to secure $8,000 instead of $800, and was foreclosed and the land bought in by McMickle, and afterwards deeded back as a gift to Watson's wife and children, and the prayer was to force Shannon's judgment upon these lands and certain personalty covered up by this fraud of McMickle and the R. H. Watson family, because their judgment covered this property, really R. H. Watson's, as well as R. G. Watson's property, to-wit: Dewberry's land; or the land on which his judgment had a lien.

It seems clear, from this brief analysis of the bill of complainant, that the part which brought in McMickle and the R. H. Watsons, is wholly distinct and variant from that which sets up the discharge of R. G. Watson as surety—so much so that if, as complainant alleged, the surety was relieved by the compromise, or the Shannon judgment paid off as to R. G. Watson, there would be no need to go upon and set aside the McMickle and R. H. Watson fraud.

The two prayers being inconsistent, and the facts sworn to on complainant's first line rendering the latter unnecessary, at most, barely useful, on a contingency which could not occur if Dewberry swore the truth in the first part of his bill, we think that the court did not err in dismissing the bill as to McMickle & Co. 2 *Kelly*, 419 ; 12 *Ga.*, 61 ; Story's Eq. Pl'd'gs, 271, 280, 530 (2), 541, a, c ; Adam's Eq., 310 ; Cooper's Eq. Pl'd'gs, 182.

2. The evidence was conflicting about the assent and knowledge of the security, R. G. Watson, to the contract between Shannon and R. H. Watson, and as there is no exception to the charge of the court, and the charge put the issue fairly on that point, we cannot see that the verdict is against the charge of the court or the law of the case ; and it is supported by sufficient evidence.

Judgment affirmed.